[No. 71-40606-1. Division One. December 22, 1969.]
Panel 1

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS
STATIONAK, *Appellant*.

*Alfred McBee,* for appellant (appointed counsel for appeal).

*Harry A. Follman, Prosecuting Attorney,* for respondent.

SWANSON, J.—The defendant appeals from his second conviction of first-degree assault. A new trial was granted on appeal from the first conviction. A detailed statement of the pertinent facts appears in *State v. Stationak,* 73 Wn.2d 647, 440 P.2d 457 (1968), and will not be repeated here. Defendant assigns error to the admission of certain evidence.

&#9646; First, the defendant claims it was error to permit the prosecuting witness to testify that she was in fear of the defendant at the time he entered her bedroom just prior to the assault. It is true, as defendant contends, that the apprehension of one assaulted is not a necessary element of first or second-degree assault. *State v. Stewart,* 73 Wn.2d 701, 440 P.2d 815 (1968). But, this evidence was admissible to negate defendant's explanation of the event that he only pointed the gun at her to frighten her, and that the gun discharged accidentally. The victim's testimony of fear was relevant on the issue of specific intent to kill.

> The specific intent to kill in first-degree assault cases is to be gathered from all the circumstances of the case, of which the infliction of the wound is but one.

*State v. Mitchell,* 65 Wn.2d 373, 374, 397 P.2d 417 (1964).

Second, defendant assigns error to the admission of Dr. Johnston's testimony concerning the paralysis of the prosecuting witness. The doctor testified, over objection, as follows:

> The bullet had penetrated the liver, coming through the vertebrae, bony vertebrae and going through vertebrae it hit, fragmenting, and these fragments had penetrated through the spinal cord destroying a great deal of the left side of the spinal cord, and producing injury to the entire spinal column.

&#9646; The doctor was also permitted to say in substance that the described damage caused the paralysis. Defendant

insists that whatever probative value this testimony had was far outweighed by the inflammatory and prejudicial nature of it. We disagree. The evidence was proper, not only to show a specific intent to kill—a necessary element of first-degree assault—but that grievous bodily harm was inflicted upon the victim—a necessary element of the included offense of second-degree assault. *State v. Davis,* 72 Wash. 261, 130 P. 95 (1913).

Third, defendant claims error was committed by allowing the prosecuting witness to testify about her rehabilitation program and the use of her wheelchair. After naming the hospitals in which she had been treated and estimating the length of her stay at the University Hospital, she stated, over objection:

> At the University Hospital I went through a general rehabilitation program. It was both vocational and physical preparation. It was adapting myself to using the wheel chair, using braces and crutches, doing general housework, getting along in school, doing office work, and general rehabilitation program.

Is the admission of this evidence justified to show that the wound sustained involved serious bodily harm and served to prove a necessary element in the included offense of second-degree assault, as the state contends?

 Defendant argues that this evidence can serve no useful purpose except to prejudice the defendant in the eyes of the jury. While the trial court must be afforded wide latitude in the admission of evidence, evidence which contributes nothing of substance to a determination of the issues in the case, but appeals primarily to the sympathy or passion of the jury, is improper. See *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). This evidence has such an appeal. It was improper and should not have been admitted. Did prejudice result requiring a new trial? A new trial will be granted only if we can say that the admission of the offending evidence was prejudicial error. The controlling principle is stated in that portion of *State v. Mar-*

*tin,* 73 Wn.2d 616, 440 P.2d 429 (1968), cited in *State v. Nist,* 77 W.D.2d 229, 236, 461 P.2d 322 (1969), as follows:

The rule is now definitely established in this state that the verdict of the jury in a criminal case will be set aside and a new trial granted to the defendant, because of an error occurring during the trial of the case, only when such error may be designated as prejudicial. . . .

A prejudicial error may be defined as one which affects or presumptively affects the final results of the trial. [citation omitted] When the appellate court is unable to say from the record before it whether the defendant would or would not have been convicted but for the error committed in the trial court, then the error may not not be deemed harmless, . . .

See *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969).

We have carefully examined the record and are firmly convinced that no prejudicial error resulted from the admission of the testimony regarding rehabilitation. There was no substantial dispute in the evidence presented to the jury with respect to the happenings of the events upon which the charge was based. Defendant's explanation was that it was an accident, that he only intended to frighten the girl, and that he did not know the gun was loaded.

Further, it is to be noted that the prosecuting witness was paralyzed and had to appear in court in a wheelchair. The explanation given by her regarding the therapeutic treatment she had received, the progress she had made in adapting to life in a wheelchair, and the benefits of the rehabilitation program—this evidence of which defendant complains—it seems to us, would serve to lessen the jury's concern as to the prosecuting witness' welfare and to diminish any feeling of passion and prejudice already existing because of her appearance in a wheelchair.

On review of the first trial of this case, *State v. Stationak, supra,* the court stated at 650:

A review of the record discloses ample evidence to support a verdict of assault in the first degree. On differ-

ent occasions the defendant, had threatened to kill Barbara, he broke into her home, pointed a deadly weapon at her, it discharged and she was seriously injured. An inference of the intent to kill might clearly be derived from those facts.

(Footnote omitted.)

With substantially the same evidence presented in this case, no different result could have been reached by the jury. The claimed error was not prejudicial.

■ Fourth, defendant assigns error to the testimony offered by the prosecuting witness on direct examination that on March 22, 1966, some 5½ months prior to the date of the offense with which defendant is charged, the defendant entered into her house through a bedroom window, appeared in the bathroom armed with a knife, and dragged her out of the house. Defendant says this evidence is clearly an account of an independent, unrelated crime and not admissible. It is not disputed that the general rule excludes evidence of unrelated crimes unless such evidence shows motive, intent, the absence of accident or mistake, a common scheme or plan or identity. *State v. Hames,* 74 Wn.2d 721, 446 P.2d 344 (1968). Even if the testimony of other acts of misconduct should fall into one of the recognized exceptions, it should not be admitted on that basis alone if the trial court is convinced that the resulting prejudice is so great as to outweigh the necessity of its introduction and its relevancy. In the leading case regarding this rule, *State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950), the court used this cautionary language:

We have intentionally used the phrase "may be admitted" because we are of the opinion that this class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant from

undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, and not merely on whether the evidence comes within certain categories which constitute exceptions to the rule of exclusion.

It is to be remembered that intent to kill is a necessary element in the charge of first-degree assault. The episode of March 22, 1966, was relevant and material to show the defendant's intent to kill Barbara Stevens. The rationale for this is stated in an old but still valid case, *State v. Davis*, 72 Wash. 261, 266, 130 P. 95 (1913):

> While it is true that a man is presumed to intend the natural and probable consequences of his acts, it is true also that the presumption arising from the acts alone never extends beyond the actual consequences of the acts. If one person wilfully assaults another and inflicts upon him a dangerous wound, the jury would have the right to infer from the act that he intended to inflict the dangerous wound; or, if one person wilfully assaults another and inflicts upon him a dangerous wound likely to cause death and death ensues therefrom, the jury have the right to infer from the act and its consequence that he intended to kill the person assaulted; but if a man assaults another and inflicts upon him a dangerous wound likely to cause death but death does not ensue, the jury have no right to infer from the act alone that he intended to kill, because such was not the consequence of the act.

Accord, *State v. Clark*, 98 Wash. 81, 167 P. 84 (1917).

This is particularly so in the case before this court where the defense was based on the explanation that the defendant only intended to frighten Barbara and that the gun discharged accidentally. The incident of March 22nd served to refute this defense.

> The act charged as constituting the assault did not involve inherently the element of intent, as it might have been committed mistakenly or accidently, and, as the appellant was surrounded with all reasonable inferences and the presumption of innocence, proof of a wrongful intent was essential.

*State v. Kritzer,* 21 Wn.2d 710, 712, 152 P.2d 967 (1944).

The evidence complained of tended to establish the required intent to kill and the absence of accident or mistake. The relevancy and probative force of this testimony clearly outweigh any prejudice that resulted therefrom. Furthermore,

> [t]he balancing of the relevancy and desirability of evidence of this type against its harmful effect upon an accused is a matter peculiarly within the discretion of the trial court. If it appears that the court has exercised its discretion, we will not overturn its ruling except for abuse thereof.

*State v. Johnson,* 56 Wn.2d 700, 708, 355 P.2d 13 (1960), *cert. denied,* 366 U.S. 934, 6 L. Ed. 2d 846, 81 S. Ct. 1658 (1961).

The trial court here did not abuse its discretion, and this assignment of error is without merit.

The verdict of the jury is supported by substantial evidence, and even though the defendant did not receive a perfect trial, he received a fair trial, free from prejudicial error which our constitution requires. *State v. Ingle,* 64 Wn.2d 491, 392 P.2d 442 (1964).

The judgment is affirmed.

JAMES, C. J., and FARRIS, J., concur.